CECILIA M. ALTONAGA, UNITED STATES DISTRICT JUDGE
THIS CAUSE came before the Court on Defendants, Loews Corporation; Loews Hotels Holding Corporation ("LHHC"); MB Redevelopment, LLC ("MB"); and Loews Miami Beach Hotel Operating Company, Inc.'s ("LMBHOC['s]") Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 34], filed February 23, 2018. Defendants move to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction over Loews Corp. and LHHC; Rule 12(b)(1) for lack of Plaintiff's standing; and Rule 12(b)(6) for failure to state claims for relief. (See Mot. 5-6). The Court has carefully considered the Amended Class Action Complaint [ECF No. 28]; the Motion; Plaintiff, Michael Fox's Opposition to Defendants' Motion to Dismiss ("Response") [ECF No. 37]; Defendants' Reply [ECF No. 38]; and applicable law. For the reasons explained below, the Motion is granted in part and denied in part.
I. BACKGROUND
Plaintiff brings this consumer class action on behalf of people who purchased food and/or drinks at restaurants or public food service establishments owned or controlled by Defendants in Florida and who were charged a gratuity or service charge in violation of the Florida Deceptive Unfair Trade Practices Act, Section 501.201 et seq. , Florida Statutes. (See Am. Compl. ¶ 1). Defendants allegedly violated Florida law by: unlawfully including an automatic gratuity or service charge in an amount *1244 equal to or approximately 18 to 20 percent of the charges for food and beverage without providing statutorily required notice; presenting notice of an automatic gratuity or service charge in small and hard-to-read type; hiding the notice on page one of a multi-page menu; and improperly charging taxes on the gratuity in violation of the Florida Administrative Code. (See id. ).
Plaintiff is a New York resident. (See id. ¶ 5). Loews Corp. owns 100 percent of LHHC. (See id. ¶ 6). LHHC, "through its subsidiaries," owns or controls seven hotel properties in Florida. (Id. ¶ 7). MB is the owner of Loews Miami Beach Hotel. (See id. ¶ 8). LMBHOC operates the Loews Miami Beach Hotel in Miami Beach, Florida. (See id. ¶ 9). Each of the Loews hotels is a public food service establishment or restaurant. (See id. ¶ 11).
Under Section 509.214, Florida Statutes, "[e]very public food service establishment which includes an automatic gratuity or service charge in the price of the meal shall include on the food menu and on the face of the bill provided to the customer notice that an automatic gratuity is included." (Am. Compl. ¶ 13 (alteration added) (quoting Fla. Stat. § 509.214 ) ). The FDUTPA makes it unlawful to engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. (See id. ¶ 14 (quoting Fla. Stat. § 501.204(1) ) ). The Florida Administrative Code regulates how a charge for gratuities may be part of the taxable sales price of food or drinks. (See id. ¶ 15 (quoting Fla. Admin. Code r. 12A-1.0115(7) ) ).
On April 5, 2017, Plaintiff went to the Bar Collins restaurant in the Loews Miami Beach Hotel and ordered food and beverages from the restaurant menu. (See id. ¶¶ 18-19). When he was done eating, Plaintiff was presented with the bill for the meal. (See id. ¶ 20). An automatic 20 percent fee, listed as a "20% SVC CHG," was included with the charges. (Id. ¶ 21 (internal quotation marks omitted) ). The menu did not mention an automatic gratuity or service charge of any amount would be added to the check. (See id. ¶ 22). Below the check total was an extra line for Plaintiff to add a "Tip," which he then did add. (Id. ¶ 23 (internal quotation marks omitted) ). Plaintiff paid the check in full, including the automatic service charge. (See id. ¶ 24).
In somewhat contradictory fashion, Plaintiff later alleges the automatic gratuity or service charge was included on the menu "in small, difficult to read type" (id. ¶ 58(b) ), and was "found on one page of a multi-page menu" (id. ¶ 58(c) ).
On April 6, 2017, Plaintiff dined at the Lure Fishbar restaurant at the Loews Miami Beach Hotel. (See id. ¶ 25). When he was done eating, he was presented a check which included an automatic fee of an undisclosed percentage of the total listed as a "SVC CHR FEE," equal to 20 percent of the subtotal of the food and/or beverage charges on the check. (Id. ¶¶ 26-27 (internal quotation marks omitted) ). The 20 percent service charge amount appears to have been included in the calculation of the charged taxes, although it is unclear how the tax is calculated or whether the fee is a non-taxable gratuity under Rule 12A-0115(7). (See id. ¶ 28). Below the check total was an extra line for Plaintiff to add an "Additional Tip." (Id. ¶ 29 (internal quotation marks omitted) ). There was no mention on the restaurant menu that an automatic gratuity or service charge would be added to the check. (See id. ¶ 30). Plaintiff paid the check in full, including the automatic service charge. (See id. ¶ 31).
Again, the allegation there was no mention of the automatic gratuity or service charge is contradicted in other paragraphs of the Amended Complaint. (See id. ¶¶ 58(b)-(c) ).
*1245 Defendants are responsible for the hotel and restaurant operations at the Loews Miami Beach Hotel, and Loews Corp. and LHHC are responsible for the other Loews establishments named in the pleading. (See id. ¶ 32). Plaintiff sues individually and on behalf of a class consisting of all persons who were customers of a Loews hotel restaurant in Florida during the class period and who were billed and paid for food and/or beverages where the bill included an automatic service charge. (See id. ¶ 36).
Plaintiff brings five claims for relief. Each count incorporates all of the prior allegations, including allegations supporting a particular claim for relief. (See Am. Compl. ¶ 46 ("Plaintiff incorporates the paragraphs above as if fully set forth herein."); see also id. ¶¶ 56, 66, 75, 78 (same) ). As such, it is a quintessential shotgun pleading-a defect Defendants pointed out existed in the initial Complaint [ECF No. 1] (see First Motion to Dismiss [ECF No. 15] 6-7), and which they argue in the present Motion is fatal to the Amended Complaint (see Mot. 10-11). Remarkably, despite Defendants having put him on notice of the defect in the initial Complaint, Plaintiff did not cure the defect with his Amended Complaint. Rather, he finds it disingenuous and "hypocritical[ ]" for Defendants to claim they are unable to understand his claims given they managed to prepare a 26-page motion to dismiss. (Resp. 12 (alteration added) ). Shame on Plaintiff for not heeding the Eleventh Circuit's repeated pronouncements criticizing shotgun pleadings like his.
"The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp. , 305 F.3d 1293, 1295 (11th Cir. 2002). Shotgun pleadings make it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll. , 77 F.3d 364, 366 (11th Cir. 1996). Therefore, "shotgun pleadings are routinely condemned by the Eleventh Circuit." Real Estate Mortg. Network, Inc. v. Cadrecha , No. 8:11-cv-474-T-30AEP, 2011 WL 2881928, at *2 (M.D. Fla. July 19, 2011) (citing Pelletier v. Zweifel , 921 F.2d 1465, 1518 (11th Cir. 1991) ); see also Davis v. Coca-Cola Bottling Co. , 516 F.3d 955, 979 n.54 (11th Cir. 2008) ("[S]ince 1985 we have explicitly condemned shotgun pleadings upward of fifty times." (alteration added) ); Strategic Income Fund , 305 F.3d at 1295 n.9 ("This court has addressed the topic of shotgun pleadings on numerous occasions in the past, often at great length and always with great dismay." (citations omitted) ); Byrne v. Nezhat , 261 F.3d 1075, 1131 (11th Cir. 2001) ("Shotgun pleadings, if tolerated, harm the court by impeding its ability to administer justice."). Consequently, and preliminarily, the Amended Complaint is defective and must be dismissed.
Nevertheless, the Court addresses the Amended Complaint's five claims and the parties' arguments in order to give Plaintiff direction on how to proceed with a final, amended pleading, while recognizing the deadline to amend pleadings has passed. (See Order Setting Trial [ECF No. 26] 1).
Count I, titled, "Per Se Violations of the Florida [Deceptive and Unfair] Trade Practices Act" (Am. Compl. 10 (alteration added) ), alleges Defendants' failure to provide the statutorily required notice of an automatic gratuity or service charge constitutes a per se violation of the FDUTPA. (See id. 10-12). Count II is titled "Violations of the Florida [Deceptive and *1246 Unfair] Trade Practices Act" (id. 12 (alteration added) ), and it alleges Loews's acts and practices are unconscionable, unfair, and deceptive. (See id. 12-15). Count III alleges "Violations of Rule 12A-1.0115 of the Florida Administrative Code." (Id. 15-17). Count IV is titled "Declaratory Judgment," and Count V is titled "Injunctive Relief." (Id. 17).
Defendants seek dismissal of the Amended Complaint with prejudice. (See Mot. 19).
II. DISCUSSION
A. Personal Jurisdiction Over Loews Corp. and LHHC
Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a claim against it by asserting the defense of lack of personal jurisdiction. "A federal court sitting in diversity may properly exercise jurisdiction over a defendant only if two requirements are met: (1) the state long-arm statute, and (2) the Due Process Clause of the Fourteenth Amendment." Posner v. Essex Ins. Co., Ltd. , 178 F.3d 1209, 1214 (11th Cir. 1999) (citation omitted). "A plaintiff seeking to establish personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." Louis Vuitton Malletier, S.A. v. Mosseri , 736 F.3d 1339, 1351 (11th Cir. 2013) (internal quotation marks and citation omitted). The initial burden is on the plaintiff to plead a prima facie case of in personam jurisdiction over defendants; if he does, the burden shifts to the defendants to produce evidence refuting those allegations. See Milligan Elec. Co. v. Hudson Const. Co. , 886 F.Supp. 845, 849 (N.D. Fla. 1995) (noting a motion to dismiss without supporting affidavits "challenge[s] the sufficiency of the jurisdictional allegations of the complaint." (alteration added; citation omitted) ).
In a footnote of their Motion, Loews Corp. and LHHC challenge the sufficiency of the jurisdictional allegations against them. (See Mot. 10 n.6). Plaintiff does not respond to this argument at all in his Response. (See generally Resp.). In their Reply, Defendants again assert, this time in the body of the memorandum, the Amended Complaint fails to plead a prima facie case of personal jurisdiction against Loews Corp. and LHHC. (See Reply 3-4). Defendants' assessment is correct.
Plaintiff alleges LHHC and Loews Corp. are Delaware corporations with their principal places of business in New York. (See Am. Compl. ¶¶ 6-7). Loews Corp. owns 100 percent of LHHC (see id. ¶ 6), and it is LHHC's subsidiaries that operate the hotel properties (see id. ¶ 7). No other jurisdictional allegations appear in the pleading as to these Defendants. The factual allegations are insufficient to confer upon the Court personal jurisdiction over these Defendants. See Hard Candy, LLC v. Hard Candy Fitness, LLC , 106 F.Supp.3d 1231, 1240 (S.D. Fla. 2015) ("Generally ... a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there." (internal quotation marks and citation omitted; alteration added) ). Consequently, LHHC and Loews Corp. are dismissed.
B. Standing and Subject Matter Jurisdiction
Defendants challenge Plaintiff's standing to bring the claims asserted, and so Rule 12(b)(1) applies. See Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc. , 524 F.3d 1229, 1232 (11th Cir. 2008). "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under [ Rule] 12(b)(1)." Id. (alteration added; internal *1247 quotation marks and citation omitted). A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be based upon either a facial or factual challenge to the complaint. See McElmurray v. Consol. Gov't of Augusta-Richmond Cty. , 501 F.3d 1244, 1251 (11th Cir. 2007) (citation omitted). In addressing a facial attack, the court merely looks to see if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction, and the complaint's allegations are accepted as true. See id. (citation omitted). In contrast, because a factual attack challenges the existence of subject matter jurisdiction in fact, the court may consider matters outside the pleading such as testimony and affidavits. See id. (citation omitted).
Defendants challenge Plaintiff's standing to pursue his claims on the basis he has failed to allege any harm. (See Mot. 6-8; Reply 4-5). Defendants assert Plaintiff does not allege he was forced to pay the automatic gratuities or service charges assessed, nor does he allege he asked for removal of the charges but was denied. (See Reply 4). "Without such an allegation," say Defendants, Plaintiff "has not alleged that he suffered any harm and therefore lacks standing to pursue his claims." (Id. (citing Spokeo, Inc. v. Robins , --- U.S. ----, 136 S.Ct. 1540, 1548, 194 L.Ed.2d 635 (2016) ) ).
For a plaintiff to have standing, he must allege: an injury in fact, that is, "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel , 861 F.3d 1278, 1290 (11th Cir. 2017) (internal quotation marks and citation omitted). He must also allege a "causal connection between [his] injury and the defendant's conduct"; and "that it is likely-and not merely speculative-that a favorable decision by the court will redress the injury." Id. (alteration added; internal quotation marks and citations omitted). Plaintiff insists he satisfies these elements.
First, Plaintiff explains the injury he suffered was paying an improperly disclosed service charge; the typical consumer presented with the check Plaintiff received does not know the automatic service charge is illegal. (See Resp. 4, 7). Simply seeing the charge on his bill does not signify Plaintiff knew the charge was unlawful. (See id. 7). Plaintiff asserts the fact the charge is first disclosed to the consumer only after the meal and added to the bill at the time of presentment, with no notice, means it is involuntarily paid, given he did not have the right to consent to the charge, as section 509.214's notice requirement is meant to guarantee. (See id. ). Plaintiff further asserts there is no requirement a layperson consumer object and point out the illegality of the charge at the time the check is presented in order to recover. (See id. ).
Plaintiff's injury-involuntary payment of the improperly disclosed charges-may be fairly traceable to one or more properly named Defendants (the matter of which Defendants is addressed below). See Deere Constr., LLC v. Cemex Constr. Materials Fla., LLC , 198 F.Supp.3d 1332, 1340 (S.D. Fla. 2016) ("Plaintiff has also clearly demonstrated the causal connection between Defendants' misrepresentations and Plaintiff's loss: Plaintiff and the putative class members have been aggrieved by Defendants' unfair and deceptive practices by submitting payments for what they believed were charges associated with fuel and environmental costs, when in fact those charges were merely ways for Defendants to make additional profit."). And Plaintiff's injury may be redressed by a favorable decision requiring the return of the charges paid. (See Resp. 4). These points are well-taken.
*1248 Defendants place too much emphasis on the mere fact Plaintiff paid the charges as evidencing the absence of any injury, and hence, Plaintiff's lack of standing. Properly understood, Plaintiff's allegations are his payment of the charges was involuntary, and whether he had the right or even the knowledge to contest the charges at the time he paid them following inadequate disclosure does not cancel his injury. Defendants' request for dismissal on the basis of lack of standing is denied.
C. Pleading Defects
Defendants' remaining arguments for dismissal of the Amended Complaint are brought under Rule 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6) ], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (alteration added) (quoting Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). Although this pleading standard "does not require 'detailed factual allegations,' ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (alteration added) (quoting Twombly , 550 U.S. at 555, 127 S.Ct. 1955 ). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly , 550 U.S. at 555, 127 S.Ct. 1955. Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal , 556 U.S. at 679, 129 S.Ct. 1937 (citing Twombly , 550 U.S. at 556, 127 S.Ct. 1955 ).
To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678, 129 S.Ct. 1937 (alteration added) (citing Twombly , 550 U.S. at 556, 127 S.Ct. 1955 ). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." Sinaltrainal v. Coca-Cola Co. , 578 F.3d 1252, 1261 (11th Cir. 2009) (citation omitted), abrogated on other grounds by Mohamad v. Palestinian Auth. , 566 U.S. 449, 132 S.Ct. 1702, 182 L.Ed.2d 720 (2012).
On a motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff and accepts its factual allegations as true. See Brooks v. Blue Cross & Blue Shield of Fla., Inc. , 116 F.3d 1364, 1369 (11th Cir. 1997) (citing SEC v. ESM Grp., Inc. , 835 F.2d 270, 272 (11th Cir. 1988) ). Unsupported allegations and conclusions of law, however, will not benefit from this favorable reading. See Iqbal , 556 U.S. at 679, 129 S.Ct. 1937 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); see also Sinaltrainal , 578 F.3d at 1260 ("[U]nwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of [a] plaintiff's allegations." (alterations added; internal quotation marks omitted) (quoting Aldana v. Del Monte Fresh Produce, N.A., Inc. , 416 F.3d 1242, 1248 (11th Cir. 2005) ; other citation omitted) ).
Defendants raise several discrete arguments challenging the sufficiency of the Amended Complaint, considered below.
1. Plaintiff Improperly Lumps all Defendants Together
According to Defendants, Plaintiff defines "Loews" or "Defendants" collectively as representing four distinct entities. (See Mot. 9). Of the four, the only two that remain under consideration are MB and LMBHOC. As explained, MB allegedly owns Loews Miami Beach Hotel (see Am. Compl. ¶ 8), while LMBHOC operates the Loews Miami Beach Hotel (see id. ¶ 9).
*1249 The Amended Complaint makes no attempt to distinguish between conduct attributable to MB versus LMBHOC.
The undersigned has previously recognized:
A complaint is adequate if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a complaint indiscriminately lumps all defendants together, it fails to comply with Rule 8. See Lane v. Capital Acquisitions & Mgmt., Co. , No. 04-60602 CIV, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, the [ ] Complaint fails to satisfy the minimum standard of Rule 8."). While a complaint against multiple defendants may be "read as making the same allegation against each defendant individually," the "factual allegations must give each defendant 'fair notice' of the nature of the claim and the 'grounds' on which the claim rests." George & Co., LLC v. Alibaba.com, Inc. , No. 2:10-cv-719-FtM-29DNF, 2011 WL 6181940, at *2 (M.D. Fla. Dec. 13, 2011) (citations omitted).
Joseph v. Bernstein , Case No. 13-24355-Civ, 2014 WL 12600805, at *3 (S.D. Fla. Apr. 21, 2014).
Notwithstanding Plaintiff's protestations to the contrary (see Resp. 9-11), the Court agrees the pleading impermissibly and confusingly lumps the two remaining Defendants together. Defendants explain one instance where the confusion and careless pleading style runs afoul of Rule 8(a)(2) : Plaintiff alleges all four named Defendants committed deceptive conduct at 36 restaurants in seven Loews hotels in Florida (see Am. Compl. ¶ 60); elsewhere alleges LMBHOC only operates the hotel at Collins Avenue (see id. ¶ 9); and fails to explain how LMBHOC can plausibly be responsible for the conduct occurring at restaurants in six other hotel locations in Florida. (See Reply 2-3). And while Plaintiff also alleges the Florida hotels are owned and operated by LHHC's subsidiaries (see Am. Compl. ¶ 7), he fails to explain how the remaining named Defendants are responsible for conduct he attributes to the unnamed subsidiaries (see Reply 3). Notably, the Amended Complaint contains no allegations allowing a piercing of the corporate veil. See, e.g., In re Hillsborough Holdings Corp. , 176 B.R. 223, 244 (M.D. Fla. 1994) (noting a party "seeking to pierce the corporate veil between a parent and a subsidiary corporation must establish ... that: 1) the subsidiary was a mere instrumentality of the parent corporation, 2) the parent corporation engaged in improper conduct, and 3) the improper use of the corporate form caused injury to the claimant" (alteration added; citations omitted) ).
When Plaintiff re-pleads, he is instructed not to lump Defendants together without providing the necessary clarity.
2. Count I: Per Se Violations of the FDUTPA
As Defendants observe, a FDUTPA violation may be based on the violation of a statute. (See Mot. 12 (citing Fla. Stat. § 501.203(3)(c) ) ). Plaintiff alleges Defendants violate Florida Statute 509.214 by failing to include the automatic gratuity or service charge on their menus and on the faces of the bills they provide customers. (See Am. Compl. ¶¶ 49-50). Plaintiff alleges Defendants' failure to provide the statutorily required notice constitutes a per se violation of the FDUTPA. (See id. ¶ 54). But according to Defendants, Plaintiff's allegations confirm notice is provided on the menus and on the bills, thereby "fly[ing] in the face of any suggestion that he was unaware that an automatic gratuity or service *1250 charge was included in his bill. As a result, his claims lack facial plausibility ...." (Mot. 12 (alterations added) ).
Plaintiff reminds Defendants of his allegations, where he states no notice of the automatic gratuity appeared on the restaurant menus, either the hard copy received in the restaurant or the menu posted online. (See Resp. 13 (quoting Am. Compl. ¶¶ 22, 30) ). Defendants do not resurrect this issue in their Reply. Consequently, Defendants' request for dismissal of Count I on the basis it does not state a plausible claim of a FDUTPA per se violation is rejected.
3. Counts I and II: Fair Notice of the FDUTPA Claims
Defendants next challenge the sufficiency of the FDUTPA claims by insisting the Amended Complaint does not put each of the Defendants on notice of what deceptive or unfair conduct each is responsible for, and fails to reconcile its allegation the restaurants are operated by subsidiaries. (See Mot. 13-14). Defendants also take issue with inconsistent allegations, such as the alleged absence of the disclosure of automatic gratuities alongside allegations regarding reference to notice of the automatic charges appearing in "small, difficult to read type," "found on one page of a multi-page menu." (Id. 14 (internal quotation marks and alteration omitted) (quoting Am. Compl. ¶¶ 1, 58(b)-(c) ) ). Defendants also fault Plaintiff for not including images of the menus or receipts he describes. (See id. 14-15).
This Order has already addressed the imprecision resulting from Plaintiff lumping all Defendants indiscriminately together with factual allegations that in many instances do not support treating all Defendants collectively. Given Plaintiff is allowed to amend if he wishes to proceed, he is to eliminate the inconsistencies noted. He does not have to, however, include images of the menus or receipts.
4. Count II: Violations of the FDUTPA
In his Response, Plaintiff clarifies the Count II FDUTPA violation is broader than the one stated in Count I, the latter alleging no notice of the automatic gratuity is given in the menu. (See Resp. 13). According to Plaintiff, the theory behind Count II is "even where a restaurant's menu contains some notice of an automatic gratuity or service charge being added to the bill, such notice is nevertheless inadequate and amounts to an unfair and deceptive practice because it is presented in a manner that is intentionally difficult to read or otherwise hidden from the customer." (Id. ). Given this clarification drawn in the Response, Defendants return with a new argument directed to Count II: Defendants assert Plaintiff has conceded he suffered no injury, and hence has no standing, to bring Count II because he alleges he only visited restaurants that provided no notice rather than inadequate notice. (See Reply 7-8 (citing Am. Compl. ¶¶ 22, 30 (both alleging there was no mention on the restaurant menu of the automatic gratuity or service charge) ) ). Of course, given the shotgun pleading incorporates into Count I all of the Amended Complaint's preceding allegations, Count I presumably alleges no notice as well as inadequate notice. (See Reply 7 n.5).
Defendants' points are well-taken. Plaintiff cannot pursue in Count II, or Count I for that matter, claims of deceptive and unfair practices under the FDUTPA arising from inadequate disclosures in menus he never saw. See Griffin v. Dugger , 823 F.2d 1476, 1483 (11th Cir. 1987) (noting "each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to *1251 that claim"). Once the inadequate-disclosure allegations are removed from the Count II FDUTPA claim, it is merely duplicative of the FDUTPA claim in Count I.
When Plaintiff files his second amended complaint, he shall either eliminate Count II or clarify the basis for his claim of injury arising from inadequate disclosures.
5. Rule 9(b) and the FDUTPA Claims
Defendants next assert the FDUTPA claims must be dismissed because they are based on false representations, yet fail to comply with Federal Rule of Civil Procedure 9(b)'s particularity requirements for claims sounding in fraud. (See Mot. 15; Reply 9). Certainly, "[t]he particularity requirement of Rule 9(b) applies to all claims that sound in fraud, regardless of whether those claims are grounded in state or federal law." Llado-Carreno v. Guidant Corp. , No. 09-20971-CIV, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011) (alteration added; citations omitted). Defendants identify one allegation-Defendants' "falsely representing that higher charges for food and beverages were part of the cost of the food and/or beverages ordered by Plaintiff" (Am. Compl. ¶ 58(e) )-that requires compliance with Rule 9(b), but for which the Amended Complaint "does not come close" to doing so (Mot. 15).
Paragraph 58 of the Amended Complaint lists nine ways Defendants violated Florida law and engaged in deceptive practices in failing to disclose or inadequately disclosing the practice of adding automatic gratuities to their bills. (See Am. Compl. ¶¶ 58(a)-(i) ). The quoted section is but one of those ways. Proof of misrepresentation or deceit, as would constitute a fraud, is not a necessary element in all causes of action brought under the FDUTPA. See Donald Frederick Evans & Assocs., Inc. v. Continental Homes, Inc. , 785 F.2d 897, 916 (11th Cir. 1986) (citation omitted); see also SIG, Inc. v. AT & T Digital Life, Inc. , 971 F.Supp.2d 1178, 1195 (S.D. Fla. 2013) ("FDUTPA claims can be based on deceptive or unfair practices that do not involve fraud ... and need not be pled with particularity." (alteration added; citations omitted) ). Given Plaintiff adequately describes the ways in which Defendants' conduct is unfair and deceptive, hence violating the FDUTPA, the Court will not strike in line-item fashion one alleged manner in which Defendants violated the FDUTPA. See, e.g., Holguin v. Celebrity Cruises, Inc. , No. 10-20215-CIV, 2010 WL 1837808, at *1 (S.D. Fla. May 4, 2010) (citation omitted).
6. Count III: Effect of the Federal Tax Injunction Act
Defendants request dismissal of Count III, alleging a violation of Florida Administrative Code Rule 12A-1.0115, on the basis it is barred by the Federal Tax Injunction Act. (See Mot. 16-18; Reply 9-10). Again, Count III alleges Defendants violated Rule 12A-1.0115 by collecting too much money as tax, as they improperly charged sales tax on the automatic gratuities; and those amounts should be refunded by Defendants to diners like Plaintiff as compensatory relief. (See Am. Compl. ¶¶ 67-74). Defendants argue the claim ignores the Rule's prescription that "service charges" like those added to Plaintiff's bill "are subject to tax." (Mot. 17 (emphasis and internal quotation marks omitted) (quoting Fla. Admin. Code r. 12 A-1.0115(7)(c) ) ). Moreover, they argue under the Federal Tax Injunction Act, "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." (Id. (internal quotation marks omitted) (quoting 28 U.S.C. § 1341 ) ).
*1252 In this regard, Defendants rely on Penzer v. Ford Motor Credit Company , 319 F.Supp.2d 1351, 1354 (S.D. Fla. 2004), where the court remanded the action to state court after it determined it lacked subject matter jurisdiction given the suit, which alleged the defendants improperly collected state sales taxes at the end of the plaintiffs' automobile leases, implicated the State's ability to assess and collect taxes and the defendants had a remedy in state court. (See Mot. 17; Reply 9). The court was able to find a "plain, speedy and efficient remedy" in state court, because prior to removal of the action, the defendants' motion to compel arbitration was already pending in state court, and but for the defendants' removal, could have provided the defendants with the adequate arbitration remedy they were seeking. Penzer , 319 F.Supp.2d at 1354 (internal quotation marks omitted) (quoting 28 U.S.C. § 1341 ).
Plaintiff does not address Penzer directly in his Response. Yet, he does argue Defendants have failed to show he may obtain the refund remedy he seeks in state court, and in fact, he plainly alleges there is no such remedy available to him. (See Resp. 17 (citing Am. Compl. ¶ 73) ). He also states at least one court has found a party aggrieved by a defendant restaurant's illegal application of tax to delivery fees must seek a refund directly from the restaurant, and not the Florida Department of Revenue, and therefore had no administrative remedy. (See id. (citing Schojan v. Papa John's Int'l Inc. , 34 F.Supp.3d 1206, 1212 (M.D. Fla. 2014) ) ). In Schojan , the court agreed with the plaintiffs there was no administrative remedy they could pursue with the Florida Department of Revenue to recover allegedly illegal sales taxes paid on delivery fees, as the refund remedy was only available to company-owned restaurants that collected the illegal tax and paid it to the Department. 34 F.Supp.3d at 1212. Consequently, the court denied the defendant's motion to dismiss on the basis the plaintiffs first had to pursue administrative remedies. See id.
More importantly, Plaintiff argues in this action he is not seeking to "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law," which is what the Federal Tax Injunction Act bars district courts from doing. (Resp. 17 (internal quotation marks omitted) (quoting 28 U.S.C. § 1341 ) ). Rather, he is seeking a refund from Defendants for historically collecting too much, which amounts should be refunded as damages to diners. (See id. ). To this, Defendants again insist Plaintiff does not make out a violation of the Rule, for while he focuses on tips and gratuities, "service charges" are subject to state sales tax. (Reply 10 (internal quotation marks omitted) ).
The Court is not persuaded Defendants have shown the Federal Tax Injunction Act bars Count III's request for a refund. Count III does not seek a court order enjoining, suspending or restraining the assessment of any tax under State law, and Defendants have not shown the availability of a "plain, speedy, and efficient remedy" elsewhere. 28 U.S.C. § 1341. That a portion of that which was taxed-the additional gratuities labeled as service charges-may have been properly subject to state sales tax, does not address the entirety of Plaintiff's claim in Count III. Consequently, Count III is not dismissed.
7. Count IV for Declaratory Judgment and Count V for Injunctive Relief
The Court summarily dismisses Counts IV and V. Count IV seeks declaratory relief, but a "court should not entertain an action for declaratory relief when the issues are properly raised in other counts of the pleadings and are already before the court."
*1253 Eisenberg v. City of Miami Beach , 1 F.Supp.3d 1327, 1350 (S.D. Fla. 2014) (internal quotation marks and citation omitted). To the extent Plaintiff prevails in his FDUTPA claims and in Count III, he will necessarily receive the "declaration" Count IV asks for.
Count V seeks injunctive relief. Yet, "any suit for a traditional injunction must be predicated upon a cause of action ..., regarding which a plaintiff must show a likelihood or actuality of success on the merits. There is no such thing as a suit for a traditional injunction in the abstract." Klay v. United Healthgroup, Inc. , 376 F.3d 1092, 1097 (11th Cir. 2004) (alteration added). Plaintiff may include injunctive relief as a remedy, in addition to compensatory damages, in any properly stated causes of action.
Being fully advised, it is
ORDERED AND ADJUDGED that the Motion is GRANTED in part and DENIED in part . Defendants, Loews Corporation and Loews Hotels Holding Corporation are DISMISSED . The Amended Class Action Complaint [ECF No. 28] is DISMISSED . Plaintiff has until April 20, 2018 to file a second amended complaint. Should Plaintiff name new parties, he shall serve them by May 4, 2018 so as not to impact the pre-trial schedule.
DONE AND ORDERED in Miami, Florida this 13th day of April, 2018.